OPINION
{¶ 1} Raymond Joseph Bruce pled no contest in the Montgomery County Court of Common Pleas to one count of aggravated vehicular homicide and two counts of operating a vehicle while under the influence ("OVI") after the court denied his motion to suppress evidence. He appeals from his conviction. *Page 2 
 {¶ 2} The state set forth the following summary of the facts at the plea hearing. On November 2, 2005, Bruce was involved in a motorcycle accident while under the influence of alcohol, as a result of which his passenger, Jennifer Barnett, was killed. Bruce had been convicted of two or more offenses of driving under the influence in the six years prior to this offense. His blood-alcohol level at the time of the accident was greater than .08 percent but less than .17 percent. Bruce was charged with one count of aggravated vehicular homicide and two counts of OVI with two or more previous violations within six years.
 {¶ 3} Bruce filed a motion to suppress the blood evidence that was collected from him at Miami Valley Hospital shortly after the accident. He claimed that his blood was taken in violation of the statutory rules and administrative regulations governing such procedures. The trial court conducted a hearing on March 1, 2007, at which the state presented evidence regarding its compliance with all of the procedural requirements. The trial court concluded that the procedural requirements had been satisfied. Bruce subsequently filed a motion to dismiss one count of OVI in which he also challenged the procedures employed by the state. The motion to dismiss was also denied.
 {¶ 4} Bruce pled no contest to all of the charges. He was sentenced to three years of imprisonment on the aggravated vehicular homicide and to thirty day terms on each count of OVI, all to be served concurrently. His vehicle was also forfeited and his driver's license was suspended for life.
 {¶ 5} Bruce raises two assignments of error on appeal.
 {¶ 6} "I. THE BLOOD TESTS RESULTS SHOULD HAVE BEEN SUPPRESSED, AS PROPER PROCEDURE HAD NOT BEEN FOLLOWED." *Page 3 
 {¶ 7} Bruce contends that the state failed to establish the qualifications of the person who withdrew his blood and the chain of custody of the blood evidence, including its refrigeration. He also contends that the state violated applicable regulations by failing to prevent the destruction of the blood sample and thereby depriving him of his right to an independent test.
 {¶ 8} A defendant is required to apprise the state of the specific bases for a motion to suppress evidence so that the prosecutor can adequately prepare his case. Xenia v. Wallace (1988), 37 Ohio St.3d 216,218, 524 N.E.2d 889. When results of blood-alcohol tests are challenged in an aggravated vehicular homicide prosecution that depends upon proof of driving under the influence in violation of R.C. 4511.19(A), the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53 before the test results are admissible.State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 48.
 {¶ 9} As a preliminary matter, we note that Bruce's motion to suppress asserted, very generally, that the test was "not completed in accordance with the statutes and regulations" governing such procedures. It did not challenge any specific procedure except to question whether the blood had been withdrawn within two hours of the alleged offense. At the suppression hearing, the state presented evidence of substantial compliance with the regulations, and the motion to suppress was overruled. Later, in his motion to dismiss one of the counts of OVI, Bruce advanced a more specific argument that chain of custody and refrigeration of the sample had not been established. In response to this motion, which raised these objections specifically for the first time, the state presented additional evidence as to these issues. The trial court credited the state's evidence and overruled the motion to dismiss. Thus, the trial court *Page 4 
heard evidence on two separate occasions regarding the state's compliance with statutes and regulations in its handling of the blood evidence. We will consider the evidence from both of these hearings in addressing Bruce's argument on appeal about the state's compliance with the necessary procedures.
 {¶ 10} Bruce challenges the state's compliance with the necessary procedures in three respects.
 {¶ 11} First, Bruce contends that the state's evidence did not establish that Elizabeth Alley, who withdrew Bruce's blood at Miami Valley Hospital, was qualified to do so.
 {¶ 12} R.C. 4511.19(D)(1)(b) provides that only a "physician, a registered nurse, or a qualified technician, chemist, or phlebotomist shall withdraw a blood sample" for the purpose of determining the alcohol or drug content. No evidence was presented that Alley was a physician, nurse, or chemist. Thus, we must determine whether the court reasonably concluded that she was a "trained phlebotomist." Because Ohio does not certify phlebotomists, the question whether she was a phlebotomist is akin to whether she was a qualified technician.
 {¶ 13} Alley testified that, in November 2005, she worked at Miami Valley Hospital while employed by CompuNet Clinical Laboratories. She had three years of nursing background and had been trained on how to draw blood. In fact, she testified that drawing blood for medical and forensic purposes had been her primary responsibility in eight years of employment. On the evening in question, Alley drew blood from Bruce immediately upon his arrival at the hospital for medical purposes, pursuant to hospital protocol. Shortly thereafter, Bruce was sent for a CAT scan, and a deputy arrived at the hospital requesting a second blood draw. Alley complied with the deputy's request, using a standardized kit to collect the evidence *Page 5 
and then giving the kit to the deputy. Alley testified that she had drawn blood for criminal prosecutions many times in the past and that she had complied with Department of Health regulations.
 {¶ 14} The state's evidence clearly established that Alley had expertise in the collection of blood samples. As such, the trial court properly concluded that she was a phlebotomist or qualified technician authorized to withdraw a blood sample pursuant to R.C. 4511.19(D)(1)(b).
 {¶ 15} Second, Bruce asserts that the state failed to establish the blood sample's chain of custody.
 {¶ 16} Molly Haas, a deputy sheriff and evidence technician, was assigned to collect a blood sample from Bruce at MVH. She testified that, after she obtained the sample from Alley, she immediately took it to the Montgomery County property room and placed it in a refrigerator that displayed a temperature of 39°. The sample was placed in the refrigerator at 12:09 a.m. on November 3, 2005, less than two hours after the accident. Sergeant Richard Whalen took the blood sample from the property room to the crime lab on November 7. The sample was received by an intake clerk, who placed it in the "outer property room refrigerator." From there, it was transferred to the inner property room refrigerator and to the toxicology refrigerator before the testing was completed. All of the refrigerators were reported to have been in working order, and the appropriate seals and notations were present on the specimen. No evidence was offered to show that the sample was unrefrigerated any longer than was necessary to transport it. Based on this evidence, the trial court reasonably concluded that the state established the chain of custody and the refrigeration of the specimen.
 {¶ 17} Third, Bruce contends that his due process rights were violated because the state *Page 6 
did not retain the blood specimen so that he could conduct an independent analysis. The trial court concluded that the state had not had the burden of notifying the crime lab of the court's order to preserve the blood sample, that there was no evidence that the sample was exculpatory, and that there was no evidence of bad faith on the part of the state.
 {¶ 18} Ohio Adm. Code 3701-53-05 requires that a blood specimen be retained for one year. Bruce's blood was drawn on November 2, 2005. On August 11, 2006, at Bruce's request, the trial court issued an order that instructed the Miami Valley Regional Crime Lab to preserve the blood sample taken from Bruce on the night of the accident so that an independent analysis could be conducted by Bruce's expert, Larry Dehus. This order had been prepared by Bruce's attorney, who served it upon the prosecutor and informed Dehus of the order, but the crime lab was not notified. Dehus did not contact the crime lab to retrieve the sample until January 3, 2007. By that time, the sample had been destroyed because it was more than one year old.
 {¶ 19} We agree with the trial court's conclusion that the state did not act in bad faith with regard to the destruction of the blood evidence. Indeed, it appears that Bruce and his expert bear the responsibility for not notifying the lab of Bruce's desire to test the sample within a reasonable time. Thus, Bruce's due process rights were not violated.
 {¶ 20} The trial court did not err in overruling the motion to suppress.
 {¶ 21} The first assignment of error is overruled.
 {¶ 22} "II. APPELLANT ASSERTS INEFFECTIVE ASSISTANCE OF COUNSEL"
 {¶ 23} Bruce contends that trial counsel was ineffective because, after initially raising a question about Bruce's competence, counsel stipulated to the findings of Dr. Susan Perry Dyer, who found that he was competent to stand trial. Bruce believes that his attorney should have *Page 7 
requested a second opinion.
 {¶ 24} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance.Strickland v. Washington (1984), 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id.
 {¶ 25} A defendant is presumed to be competent to stand trial. To be found incompetent to stand trial, a preponderance of the evidence must show that the defendant is incapable of understanding the nature and objective of the proceedings against him or of assisting in his defense. R.C. 2945.37(G).
 {¶ 26} Dr. Susan Perry Dyer's report is not in the record. However, she has been recognized many times as a qualified expert, and Bruce has not presented any evidence that trial counsel acted unreasonably in accepting her conclusion that Bruce was competent to stand trial.
 {¶ 27} Defense counsel did hire a clinical neuropsychologist, William R. Arnold, to review Dr. Dyer's report. Dr. Arnold's report indicated that Bruce suffered from cognitive impairment as a result of the accident which might present some challenges in court, but it did not suggest that Bruce would be incapable of understanding the court proceedings or assisting in his defense. Specifically, Dr. Arnold stated that Bruce showed "a mild decline in his cognitive functioning, particularly for tasks which require perceptual problem solving or perceptual information processing skills." Dr. Arnold *Page 8 
also noted that Bruce did not remember the events associated with the motorcycle accident, which would be a detriment to his participation in his defense. Defense counsel used this report to argue for leniency in sentencing.
 {¶ 28} In our view, counsel's representation did not fall below an objective standard of reasonableness by accepting Dr. Dyer's opinion that Bruce was competent to stand trial and, instead, in using evidence of his impairment to argue for leniency. It is apparent that Dr. Arnold's opinions were not based on the legal standard for competency, and there is no basis to conclude that he would have found Bruce to be incompetent if he had used the stringent standard set forth in R.C. 2945.37(G). Counsel could have reasonably concluded that using the evidence of impairment to seek leniency in sentencing would be a more realistic and effective tactic.
 {¶ 29} Bruce also contends that his attorney should have requested a second medical opinion regarding his competency. Because we have no basis to conclude that a second opinion would have been different from Dr. Dyer's, we cannot conclude that such a request would have helpful to Bruce or would have affected the outcome of the case.
 {¶ 30} The second assignment of error is overruled.
 {¶ 31} The judgment of the trial court will be affirmed.
BROGAN, J. and DONOVAN, J., concur.
Kirsten A. Brandt
William T. Daly
 Hon. Gregory F. Singer *Page 1