[Cite as *State v. Barron*, 2011-Ohio-2425.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### GREENE   COUNTY

STATE OF OHIO                                    :

                                         :        Appellate Case No.   10-CA-28

        Plaintiff-Appellee          :

                                         :        Trial Court Case No.   08-CR-282

v.                                                :

                                         :        (Criminal Appeal from

JONATHON M. BARRON                              :         Common Pleas Court)

                                         :

        Defendant-Appellant        :

                                         :

                          . . . . . . . . . . .

## O P I N I O N

Rendered on the 20th day of May, 2011.

. . . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by STEPHANIE R. HAYDEN, Atty. Reg. #0082881, 61 Greene Street, Xenia, Ohio 45385
        Attorneys for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. #0066964, Killin & Wilkins, 2661 Commons Boulevard, Suite 214, Beavercreek, Ohio 45431
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}   Jonathon M. Barron appeals from his conviction and sentence following a no-contest plea to one count of cocaine possession in violation of R.C. 2929.11(A), a fifth-degree felony.

{¶ 2}   In his sole assignment of error, Barron contends the trial court violated his due

process rights, and ignored a discovery violation, by failing to suppress urine sample test results. He argues that the test results should have been suppressed because the sample at issue was destroyed before he could have it independently tested.

{¶ 3} The record reflects that Barron was indicted for cocaine possession in April 2008 after one of his urine samples tested positive for the drug a month earlier. On August 27, 2008, he moved the trial court for an order requiring the prosecutor to give him part of the sample for independent testing. The trial court sustained the motion on October 7, 2008, ordering the prosecutor to make part of the sample "available" to defense counsel. The trial court did not order the sample to be preserved for any specific length of time. (Motion to dismiss, hearing transcript at 5). On October 10, 2008, the prosecutor and defense counsel contacted the Miami Valley Regional Crime Laboratory (MVRCL), which was holding the sample, about the procedure for having it independently tested. Shortly thereafter, the prosecutor advised defense counsel that MVRCL had refrigerated the sample. (Id. at 5-6). Defense counsel then tried to find an expert to test the sample. The experts that defense counsel contacted told him they could not accurately test the sample because it had been refrigerated rather than frozen. (Id. at 6-7). Without defense counsel's knowledge, MVRCL destroyed the urine sample sometime in March 2009, pursuant to its policy, after holding it for at least one year.

{¶ 4} On May 5, 2009, Barron moved to dismiss the indictment against him or, alternatively, for suppression of the prosecutor's urine sample test results, based on the failure to preserve the sample for independent analysis. On June 30, 2009, the prosecutor and defense counsel discovered, for the first time, that MVRCL actually had frozen the sample prior to its

destruction. (Id. at 9). At all times, MVRCL was unaware of the court order requiring the prosecutor to make the sample available for independent testing. (Id. at 33, 42).

{¶ 5} During a hearing on Barron's motion, Heather Antonides, an MVRCL supervisor, disagreed with the proposition that refrigeration rather than freezing would spoil Barron's urine sample and destroy the usefulness of independent testing. Antonides explained that freezing the sample would prevent any cocaine in it from metabolizing. (Id. at 24). On the other hand, merely refrigerating the sample would allow the cocaine to metabolize into benzoyl alkaline, a by-product of cocaine. (Id.). According to Antonides, an expert still could conclude, to a reasonable degree of medical certainty, that the sample had contained cocaine because "[b]enzoly alkaline doesn't come from anywhere else." (Id. at 34).

{¶ 6} On December 7, 2009, the trial court overruled Barron's motion. It acknowledged that Barron's attorney had received a letter from a medical doctor indicating that testing a non-frozen specimen would be useless. It also found that the prosecutor had acted in good faith in misinforming defense counsel that Barron's urine sample had been refrigerated rather than frozen. In its analysis, the trial court rejected Barron's argument that R.C. 2925.51(E) required his urine sample to be preserved for independent testing. The trial court held that the statute did not apply. Turning to the issue of which party bore responsibility for the prosecutor's misstatement, the trial court reasoned:

{¶ 7} "* * * The Court responded to [Barron's] motion for providing a specimen of the sample for his expert's review and the Court ordered the State to make that available to the Defendant. Had the Defendant contacted the Miami Valley Regional Crime Laboratory, he would have found that the specimen was frozen all the while and his expert could have made

an appropriate analysis of a portion of the specimen. Even if the Assistant Prosecuting Attorney's statement was correct that the specimen was only refrigerated, then the Defendant, along with his expert, could have found this out at the Miami Valley Regional Crime Laboratory and any such test would have demonstrated the degraded specimen and would have been beneficial to the Defendant for use at trial, or in this motion itself to demonstrate the improper preservation of the sample.

{¶ 8} "Consequently, it is the view of the Court that it was incumbent upon the Defendant, after being authorized by Court Order, to determine for himself the existence or nonexistence of the specimen in question and to determine for himself the condition of the sample in its preserved state rather than only rely on statements made by the Assistant Prosecuting Attorney." (Doc. #40 at 4-5).

{¶ 9} After the trial court overruled his motion, Barron pled no contest to the charge against him. The trial court found him guilty, imposed a twelve-month prison sentence, and stayed execution of the sentence pending appeal.[1]

{¶ 10} In his assignment of error, Barron first contends the trial court erroneously found R.C. 2925.51(E) inapplicable. The statute provides, in part:

{¶ 11} "*Any person who is accused of a violation of this chapter or of Chapter 3719 of the Revised Code* is entitled, upon written request made to the prosecuting attorney, to have a portion of the substance that is, or of each of the substances that are, the basis of the alleged

---

[1]Although Barron has not raised the issue, we note the existence of authority holding that the presence of cocaine metabolites in a urine sample, alone, is insufficient evidence to establish that a person *knowingly* obtained, possessed, or used a controlled substance. See, e.g., *State v. Lowe* (1993), 86 Ohio App.3d 749, 753-756. In the present case, however, Barron's no-contest plea constituted an admission of the facts set forth in his indictment, including the fact that he knowingly obtained, possessed, or used cocaine. In light of Barron's no-contest plea, no issue exists regarding the sufficiency of the evidence. *State v. Lawson*, Greene App. No. 2009-CA-13, 2010-Ohio-975, ¶11.

violation preserved for the benefit of independent analysis performed by a laboratory analyst employed by the accused person, or, if the accused is indigent, by a qualified laboratory analyst appointed by the court. * * * The prosecuting attorney shall provide the accused's analyst with the sample portion at least fourteen days prior to trial * * *." (Emphasis added).

{¶ 12} The trial court found the foregoing provision inapplicable because Barron was not charged with a violation of R.C. Chapter 3719. As the State concedes, however, the first sentence of R.C. 2925.51(E) also makes it applicable to anyone accused of violating R.C. Chapter 2925. In the present case, Barron's indictment charged him with violating R.C. 2925.11(A). Therefore, the trial court erred in finding R.C. 2925.51(E) inapplicable on its face. Although we determine that R.C. 2925.51(E) applies, that conclusion does not mean that Barron prevails on appeal.

{¶ 13} R.C. 2925.51(E) provides that a person accused of violating R.C. Chapter 2925 "is entitled, upon written request *made to the prosecuting attorney*, to have a portion of the substance that is * * * the basis of the alleged violation *preserved* for the benefit of independent analysis[.]" (Emphasis added). In the present case, the record is devoid of any written request *from defense counsel to the prosecutor* requesting *preservation* of the urine sample. Nevertheless, the record does contain Barron's August 27, 2008 "Motion for Independent Tests" which requests "...an order compelling the prosecution to give the Defendant's attorney a portion or specimen of the aforementioned substance * * *." (Doc. #22). The motion does not mention R.C. 2925.51(E). The parties stipulated below that the trial court's October 7, 2008 Order and Entry granting the defendant's August 27, 2008 motion required the prosecutor to make the urine sample "available," but did not specifically

order the preservation of the substance for any particular length of time. (Motion to dismiss, hearing transcript   at 5).

**{¶ 14}** We will assume, arguendo, that the prosecutor violated Barron's statutory right under R.C. 2925.51(E) by incorrectly stating that the urine sample had been refrigerated, thereby leading defense counsel to believe it had not been preserved properly,[2] or violated his statutory right by not orderingMVRCL to preserve its sample until resolution of the case. This court has previously held, in *State v. Christian* (Dec. 17, 1999), Montgomery App. No. 17824, that a violation of a defendant's statutory rights under R.C. 2925.51(E) "provides an insufficient basis, standing alone, to suppress the State's evidence." Rather, "[t]he general rule in this state is that the exclusionary rule is not to be applied to statutory violations that fall short of constitutional violations, absent a legislative mandate requiring application of the exclusionary rule. * * * Because R.C. 2925.51(E) does not provide a sanction for the State's failure to furnish the accused with a sample that is suitable for independent analysis, [a defendant must] establish a violation of his constitutional rights in order to have the State's evidence against him suppressed." Id. (Citations omitted); see, also, *State v. Johnson*, Cuyahoga App. No. 82527, 2003-Ohio-4569, ¶12 ("We note, however, that R.C. 2925.51 does not provide a sanction for the state's failure to provide a sample for independent analysis. * * * Violations of R.C. 2925.51 are evaluated under the * * * standard for due process violations.").

**{¶ 15}** For the defendant to prevail on a due process claim based on the destruction of

---

[2] On appeal, Barron argues at length that he was entitled to rely on the prosecutor's misrepresentation that the urine sample had been refrigerated rather than frozen. Without deciding the issue, we will assume, for the sake of argument, that Barron is correct.

evidence, he must show that the State either (1) failed to preserve materially exculpatory evidence or (2) in bad faith, destroyed potentially useful evidence. *State v. Franklin,* Montgomery App. No. 19041, 2002-Ohio-2370, ¶44-46, citing *Arizona v. Youngblood* (1988), 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281. In *Youngblood,* the United States Supreme Court held that the state's failure to preserve evidence that is "potentially useful," rather than material exculpatory evidence, amounts to a denial of due process only where the defendant can show the state acted in "bad faith." More than fifteen years after the *Youngblood* decision, the Supreme Court of the United States revisited the issue in *Illinois v. Fisher*, (2004) 540 U.S. 544, 124 S.Ct. 1200, 157 L.Ed.2d 1080. In that case, eight days after he was charged, Fisher had filed a motion for discovery requesting all physical evidence. Some eleven years later, while the defendant was a fugitive, the police destroyed the alleged cocaine in accordance with established procedure. The evidence was not available when Fisher was caught. The United States Supreme Court, relying on *Youngblood*, again held that when destroyed evidence is "potentially useful," rather than "material exculpatory" evidence, there must be a showing of bad faith on behalf of the prosecution. The distinction, then, is how the evidence is characterized.

{¶ 16} We determine that Barron's urine sample should be characterized as "potentially useful" evidence. The sample had no exculpatory value that was apparent before its destruction because it already had tested positive for cocaine. "[E]videntiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," is not materially exculpatory. *Christian*, supra. Barron merely planned to subject the sample to additional testing which he hoped might exonerate

him. This does not make the sample materially exculpatory. At best, it was potentially useful evidence. As such, absent a finding of bad faith, its destruction did not constitute a due process violation. *Franklin*, supra.

{¶ 17} There is no indication in this case that the actions of the prosecution, or of the crime lab, amounted to bad faith. "The term 'bad faith' generally implies something more than bad judgment or negligence. 'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or will partaking of the nature of fraud. It also embraces the actual intent to mislead or deceive another.' *State v. Buhrman* (Sept. 12, 1997), Greene App. No. 96 CA 145, unreported (citations omitted)." *Christian*, supra. Because there is no indication of bad-faith, the defendant was not entitled to have the State's evidence suppressed.

{¶ 18} Finally, we reject Barron's assertion that the trial court should have suppressed the State's urine sample test results under Crim.R. 16(E)(3) as a sanction for a discovery violation.[3] At the time of Barron's motion, Crim.R. 16(E)(3) provided: "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing into evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

{¶ 19} Barron cites *State v. Hutcherson* (Nov. 28, 1989), Franklin App. No.

---

[3] As a result of amendments to Crim.R. 16 that took effect July 1, 2010, Crim.R. 16(E)(3) no longer exists. The complete text of the former Crim.R. 16(E)(3) now is found in Crim.R. 16(L)(1).

89AP-577, for the proposition that the failure to preserve evidence for testing may be remedied by the imposition of discovery sanctions under Crim.R. 16. It is not clear, however, that the State violated any court order here. As set forth above, the order at issue required the State to make Barron's urine sample "available" to defense counsel for testing. The undisputed evidence shows that the sample was made available to defense counsel. Barron's only complaint was that the sample was not properly preserved, an issue not explicitly addressed by the trial court's order. Moreover, the sample remained available to defense counsel for several months, until MVRCL destroyed it in due course and without knowledge of the trial court's order or any objection from Barron. Cf. *State v. Bruce*, Montgomery App. No. 22612, 2008-Ohio-5514, ¶19 (reasoning that a defendant bears the burden of timely notifying MVRCL of his desire to test a sample).

{¶ 20} But even if we assume that the State did violate Crim.R. 16, we cannot say the trial court was required to suppress the urine sample test results. We review a trial court's ruling on discovery sanctions for an abuse of discretion. *State v. Johnson*, Montgomery App. No. 18642, 2001-Ohio-1543. An abuse of discretion exists when a ruling is unreasonable, arbitrary, or unconscionable. *State v. Amburgey*, Greene App. No. 2010 CA 14, 2011-Ohio-748, ¶116.

{¶ 21} In light of the circumstances set forth above, we are unpersuaded that the trial court abused its discretion in declining to suppress the lab test results. The prosecutor responded to the trial court's order by contacting MVRCL to determine the procedure for defense counsel to test the urine specimen. The prosecutor then incorrectly, but absent any indication of bad faith, told defense counsel that the specimen had been refrigerated rather

than frozen. Neither the prosecution nor the defense notified MVRCL to indefinitely preserve the sample. The sample ultimately was destroyed several months later. The sample already had tested positive for cocaine, and Barron cannot establish that he was actually prejudiced by his inability to conduct a second examination. Accordingly, we overrule his assignment of error and affirm the judgment of the Greene County Common Pleas Court.

. . . . . . . . . . . .

BROGAN, J, concurs.

FROELICH, J., concurring:

{¶ 22} According to a test by the MVRCL, appellant had cocaine in his urine in March of 2008; he was indicted in April of 2008 for possession of cocaine.

{¶ 23} In August, he filed a motion to require the prosecutor to provide him with a sample for independent testing. On October 7, 2008, the court granted the motion and ordered the prosecutor to "make available" a part of the sample to defense counsel. Three days later, the prosecutor and defense counsel had a conversation with the MVRCL, which was holding a sample, about the procedure for having it tested. In March of 2009, while defense counsel was attempting to locate and retain an expert, the MVRCL destroyed the sample.

{¶ 24} Appellant moved to dismiss the indictment or to suppress the results of the MVRCL's testing; the court denied both motions and the Appellant subsequently pled no contest.

{¶ 25} I would find a violation of Crim.R. 16 and R.C. 2925.51(E). Any attempted distinctions that there was no written request made *to the prosecuting attorney* to have the

sample *preserved* or that the sample was always available for defense counsel to obtain, approach the apex of sophistry. How could the sample be "made available" to defense counsel if it were not "preserved"? And are appellant's rights less because he sought and obtained a court order rather than relying on the good graces of the prosecutor? Should we require that a defendant somehow interplead the MVRCL or a law enforcement agency (or, if the agency is not sui juris, the governmental entity) which possesses the evidence, or seek a restraining order?

{¶ 26} Nonetheless, both the Ohio Supreme Court and we have held that mere violation of a statute does not automatically invoke the exclusionary rule absent a legislative mandate to that effect or a constitutional violation. A constitutional violation, in turn, requires a defendant to show that the State either destroyed "materially exculpatory" evidence or destroyed "potentially useful" evidence in "bad faith."

{¶ 27} For example, in *State v. Franklin*, Montgomery App. No. 19041, 2002-Ohio-2370, the State burned down a house before the defendant's investigators had the opportunity to examine it and potentially disapprove arson. We held that "bad judgment and negligence are not enough to violate a defendant's due process rights." Id., ¶48. We followed *Youngblood* for the principle that "no due process violation arises from the destruction of potentially useful evidence unless such evidence is destroyed in bad faith." Id., ¶46. We then went on to restate that " 'bad faith' generally implies something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill-will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." Id., ¶ 47,

citing *State v. Buhrman* (Sept. 12, 1997), Greene App. No. 96-CA-145.

{¶ 28} It is apparently agreed by all parties that there is no evidence of bad faith, but rather that the sample that was in the possession of the MVRCL was destroyed as part of its routine practices.[4] The State argues that the failure to make the evidence available cannot be shown to be "materially exculpable" since it is only speculation that testing by the defense would have created a reasonable doubt and that even if it were "potentially useful" there was no bad faith. As stated by the Ninth District in a case where the State refused to provide a copy of a cruiser's videotape, "the tautology is too obvious." *State v. South*, 162 Ohio App.3d 123, 2005-Ohio-2152, ¶13. The defendant has not justified his right to have the evidence presented for testing, which might help prove him not guilty, because he has not shown that the testing would produce evidence which would prove him not guilty. That is to say, if the defendant cannot prove the tests would have come back negative, he could not be prejudiced by not being able to test the substance which potentially would have come back negative. This argument proves nothing but that the defendant has conducted no testing on a sample he does not have. It is a logical truism that the absence of evidence is not the evidence of absence and it is impossible for anyone to prove a negative or, specifically in this case, for the defendant to prove a negative test without the sample to test. Id.

{¶ 29} Should evidence of guilt be suppressed because the State destroyed the only evidence from which a defendant potentially can establish reasonable doubt?[5] The dilemma

---

[4] R.C. 2933.82 now imposes a duty on a "governmental evidence-retention entity" (including a crime laboratory) to secure biological evidence for certain offenses (not including drug possession).

presented by the holding in *Youngblood* is epitomized by Larry Youngblood's eventual vindication and the conviction of the actual perpetrator. See, e.g., Uphoff, Convicting the Innocent: Aberration or Systemic Problem (2006), 2006 Wis. L. Rev. 739, 776-779. This is despite the original jury in *Youngblood* having been instructed that it was permitted to draw an adverse inference against the State if it found the State had lost or destroyed evidence.

{¶ 30} I am concurring based on the unusual facts before us and our existing precedent; but I would put the State on notice that when (1) there is a court order that requires it (I would reject any argument that evidence in the physical possession of the MVRCL or a law enforcement agency is not under the control of the State) to preserve evidence or allow testing or to make available or provide certain evidence that is (2) reasonably the only dispositive evidence against the defendant (and is not otherwise obtainable), and (3) without which the defendant will not have a meaningful opportunity to challenge the prosecution's case, the failure to preserve such evidence is prima facie proof of bad faith. And such bad faith, especially in the absence of a jury instruction regarding the consequence of the State's lack of preserving the evidence, results in a denial of the defendant's due process rights.

. . . . . . . . . .

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Stephen K. Haller
Stephanie R. Hayden

---

[5]See Bay, Old Blood, Bad Blood, and Youngblood: Due Process, Lost Evidence and the limits of Bad Faith (2008), 86 Wash. U.L. Rev. 241.

Thomas M. Kollin
Hon. J. Timothy Campbell