[Cite as *State v. Napier*, 2020-Ohio-5457.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellant, | : | CASE NO. CA2020-03-038 |
| | : | O P I N I O N |
| - vs - | | 11/30/2020 |
| | : | |
| JAMES E. NAPIER, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2010-08-1378

Schiavone Law Office, Frank J. Schiavone, IV, 2 South Third Street, Suite 300, Hamilton, Ohio 45011, for appellee

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, the state of Ohio, appeals the decision of the Butler County Court of Common Pleas granting the motion to dismiss filed by appellee, James E. Napier. For the reasons outlined below, we reverse the trial court's decision and remand this matter to the trial court for further proceedings.

{¶ 2}   On October 13, 2010, the Butler County Grand Jury returned an indictment charging Napier with illegal manufacturing of drugs in violation of R.C. 2925.04, a second-degree felony, illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.051, a third-degree felony, and aggravated possession of drugs in violation of R.C. 2925.11, also a third-degree felony.  The charges arose after it was alleged Deputy William Brown with the Butler County Sheriff's Office discovered Napier in possession of methamphetamine, and items used in the manufacture of methamphetamine, at approximately 4:50 a.m. on the morning of July 3, 2010 at the buildings located at 2617 and 2613 Tylersville Road, Fairfield Township, Butler County, Ohio.  The items Deputy Brown discovered included aluminum foil, lighter fluid, camping fuel, coffee filters, several mason jars containing certain unidentified liquids, and a substance that tests conducted by the Hamilton County Crime Lab determined was 4.96 grams of methamphetamine.  Napier pled not guilty to the charges and was thereafter released on a $30,000 surety bond.

{¶ 3}   On January 27, 2011, Napier filed a motion to suppress.  In support of his motion, Napier alleged that he was subject to an unlawful search and seizure of his person and property by Deputy Brown on the morning of July 3, 2010.  Napier also alleged that the incriminating statements he made to Deputy Brown that morning should be suppressed because he made the statements during a custodial interrogation without first being advised of his *Miranda* rights.  The trial court held a hearing on Napier's motion on February 22, 2011.  During this hearing, the trial court heard testimony from one witness, Deputy Brown.

{¶ 4}   Deputy Brown testified that he made contact with Napier at approximately 4:50 a.m. on the morning of July 3, 2010 after he noticed Napier outside a Tylersville Road gas station crouched down outside the gas station between the ice machine and propane gas exchange site "with flashlights and a flashlight [mounted] on his forehead."  Believing something could be amiss, Deputy Brown testified that he pulled his cruiser into the gas

- 2 -

station parking lot and directed the cruiser's headlights at Napier. Deputy Brown testified that he then witnessed Napier immediately stand up and begin "moving quickly" towards the buildings located next door at 2617 and 2613 Tylersville Road. Deputy Brown testified that he also saw an orange extension cord plugged into one of the gas station's outside electrical outlets running from the gas station to the buildings located next door. Deputy Brown testified that the buildings located next door were at one time a used car lot, but were now, as far as he could tell, "vacant, abandoned."

{¶ 5} Deputy Brown testified that Napier was dressed in dark clothing and appeared "extremely nervous." After parking his cruiser, Deputy Brown testified that he then exited the vehicle, approached Napier, and asked Napier what he was doing outside the gas station. To this, Deputy Brown testified that Napier told him he was "charging his cell phone." Deputy Brown testified that Napier then provided him with an identification card from Indiana and told him that he "owned the business next door and that the owner of the gas station let him use the electricity because his building didn't have any." Deputy Brown testified that an officer from the Fairfield Township Police Department then arrived on the scene to provide backup. Once this officer arrived, Deputy Brown testified that he began following the orange extension cord through the gas station's parking lot towards the buildings located next door.

{¶ 6} Deputy Brown testified the orange extension cord took him approximately 250 to 300 feet across the gas station parking lot to an open doorway entering into the buildings located at 2617 and 2613 Tylersville Road. Once there, Deputy Brown testified that he saw in plain view a duffle bag "laying in the doorway that was laying open" that contained "some aluminum foil, some can (sic) of butane gas and the coffee filters." Deputy Brown testified that he observed these items before he walked through the door while he was "standing in the doorway." Deputy Brown testified that seeing these items raised his suspicions due to

his "[p]rior experience with the manufacture of methamphetamine" where the "same type of materials" were being used to manufacture methamphetamine. Upon seeing these items, Deputy Brown testified that he then continued inside the buildings to look for other possible suspects.

{¶ 7} Once inside, Deputy Brown testified that he observed two mason jars in a back office that "had a clear liquid in it and a white substance laying on the bottom of the liquid * * *." Deputy Brown testified that he also observed "white powder" on a piece of aluminum foil in close proximity to the two mason jars, as well as a "methamphetamine pipe laying on the desk that was inside that office." Deputy Brown testified that the door to that office was open when he initially entered the buildings and that the office had candles burning inside. Deputy Brown testified that the discovery of the two mason jars raised his suspicions even further based on his experience with a "prior meth lab" that had the "same type of objects, exactly similar to these circumstances." Deputy Brown testified that the discovery of these items was consistent with what he had observed during his 13-year career as a law enforcement officer with regard to the manufacture of methamphetamine.

{¶ 8} Explaining what happened next, Deputy Brown testified:

> After clearing the building[s] and finding nobody inside, I returned out to Mr. Napier who was still with the Fairfield Township officer. I had asked him what was in the mason jars, he stated it was probably water. I then asked him what the white substance was in the bottom of the water, that's when he said that he was going to be honest, that he had a problem and it was meth.
>
> * * *
>
> After that, you know, [I] continued speaking with him briefly, that's when [Napier] advised me that he had just gotten arrested over in Indiana for meth, and continued speaking, and that's when I called the drug vice unit.

{¶ 9} Following Deputy Brown's testimony, and after considering the arguments

- 4 -

advanced by both parties, the trial court issued its decision from the bench denying Napier's motion to suppress. In so holding, the trial court found exigent circumstances existed to allow Deputy Brown to enter the buildings located at 2617 and 2613 Tylersville Road after he observed in plain view an open duffle bag that Deputy Brown knew based on his training and experience as a veteran law enforcement officer contained items commonly associated with the manufacture of methamphetamine. The trial court also found the incriminating statements Napier made to Deputy Brown were not subject to the exclusionary rule since Napier was not in custody at the time he made the statements.

{¶ 10} On March 14, 2011, the trial court revoked Napier's bond and issued a warrant for Napier's arrest after he failed to appear before the trial court for a pretrial hearing. Ten days later, on March 24, 2011, the trial court released Napier back on bond after reinstating the $30,000 surety bond Napier had originally posted after he entered his not guilty plea. After releasing Napier back on bond, the trial court then scheduled the matter for a trial to begin on May 23, 2011. Napier did not appear for trial as scheduled. When Napier failed to appear, the trial court revoked Napier's bond for a second time and issued another warrant for Napier's arrest.

{¶ 11} Approximately eight years later, on April 19, 2019, Napier was arrested on the trial court's outstanding bench warrant. Following Napier's arrest, the trial court held a hearing and set Napier's bond at $250,000. The next month, on May 16, 2019, the trial court held another hearing and scheduled the matter for a trial to begin on July 29, 2019. However, prior to trial, the trial court determined that Napier was no longer competent to stand trial. Approximately five months later, on December 11, 2019, the trial court issued a decision finding Napier had regained his competency to stand trial. The trial court then rescheduled the matter for a trial to begin on March 23, 2020.

{¶ 12} On February 20, 2020, Napier moved the trial court for an order requiring the

state to supply his expert with a representative sample of the "alleged illegal substance which serves as the basis of the within charge."  Napier supported his motion by citing to R.C. 2925.51(E).  As relevant here, pursuant to that statute:

> Any person who is accused of a violation of [Chapter 2925] or of Chapter 3719. of the Revised Code is entitled, upon written request made to the prosecuting attorney, to have a portion of the substance that is, or of each of the substances that are, the basis of the alleged violation preserved for the benefit of independent analysis performed by a laboratory analyst employed by the accused person, or, if the accused is indigent, by a qualified laboratory analyst appointed by the court.  Such portion shall be a representative sample of the entire substance that is, or of each of the substances that are, the basis of the alleged violation and shall be of sufficient size, in the opinion of the court, to permit the accused's analyst to make a thorough scientific analysis concerning the identity of the substance or substances.

{¶ 13} On February 25, 2020, the trial court held a hearing on Napier's motion.  At this hearing, the state acknowledged that it could not provide Napier's expert with the requested sample because the evidence had already been "destroyed" by the Butler County Sheriff's Office the preceding year, in 2019.  Explaining why the evidence had been destroyed, the state notified the trial court as follows:

> Your Honor, in my conversation with Ofc. Barder, he – I don't think deputy because he's with a different agency now.[1]  What he relayed to me was they sent out something to see if these cases are still active.  They sent it to him at the sheriff's office, I guess, address.  He didn't receive that.  They didn't get a response.  And it was destroyed.  That's the last I've heard. * * * I don't think anyone signed it but I don't think it was malicious.  I don't think it was in bad faith.  I think it was done – they thought it was just an old case.

To this, Napier's trial counsel stated:

> Judge, I have no reason to disbelieve the Prosecutor on that fact.  I don't believe he had any influence over the destruction of

---

1. We note that while the transcript refers to "Ofc. Barber," the circumstances indicate that the state was actually referring to Deputy Brown.  This is the same Deputy Brown who testified at the hearing on Napier's motion to suppress.

that property or guided anyway to do so. * * * But, Judge, with that fact now being known, I will inform the Court I'll be filing a motion to dismiss.

{¶ 14} On March 5, 2020, Napier filed his motion to dismiss. To support this claim, Napier relied heavily on this court's decision in *State v. Riley*, 69 Ohio App.3d 509, 511 (12th Dist.1990). In that case, the state appealed a trial court's decision dismissing an indictment charging a defendant with two counts of "drug abuse" based on the state's failure to adhere to the requirements set forth in R.C. 2925.51(E) when the state's testing process "totally consumed" the substance. Finding no error in the trial court's decision, this court stated:

> In [*State v. Godby*, 12th Dist. Warren No. CA83-05-029, 1984 Ohio App. LEXIS 8796 (Feb. 27 1984)], this court held that under R.C. 2925.51(E), the state should refrain from conducting an analysis of a suspected controlled substance without affording the accused an opportunity to have his own analyst present when only a meager quantity of the suspected substance is available for analysis and such analysis would consume the entire amount, thereby depriving the accused of the opportunity to conduct his own independent analysis. In [*State v. Smallwood*, 12th Dist. Clermont No. CA87-08-066, 1988 Ohio App. LEXIS 191 (Jan. 25, 1988)], we extended *Godby*, *supra*, to situations such as the case at bar so as to include those suspected of committing an offense within the ambit of R.C. 2925.51 as well as those formally charged with an offense. *The Smallwood decision also affirmed the dismissal of the indictment as a proper remedy for a violation of R.C. 2925.51(E).*

(Emphasis added.) *Id.* at 511.

{¶ 15} On March 12, 2020, the trial court held a hearing on Napier's motion to dismiss. After hearing arguments from both parties, the trial court issued its decision from the bench granting Napier's motion. In so holding, the trial court stated that it felt that "normally" it would be up to the trial court to "fashion the remedy to discourage the violation in that case and discourage future violations," something it would do by taking into account "the degree of bad faith," as well as whether the defendant "may have contributed to the

destruction of the evidence by fleeing and eluding the law and not abiding by the bond conditions. And secreting himself." The trial court, however, determined that under these circumstances it had "no discretion" given this court's decision in *Riley* as outlined above. Specifically, as the trial court stated:

> But it appears that the Court has no discretion, is without discretion to consider any of those factors and must simply determine whether or not there's been a violation of the duty to preserve the evidence as set forth in Revised Code Section 292[5].51. And that has been conceded. * * * So as a result of that being conceded, the Court has – the Court has no choice but to dismiss the indictment against this Defendant.

{¶ 16} The trial court then concluded and noted that its decision was based "solely" on the statutory language found in R.C. 2925.51(E) and this court's decisions in *Riley*, *Godby*, *Smallwood*, and *State v. Bross*, 12th Dist. Butler No. CA90-04-079, 1990 Ohio App. LEXIS 4716 (Oct. 29, 1990), a case in which this court found at *3 that "[t]he *Smallwood* decision * * * affirmed the dismissal of the indictment as a proper remedy for a violation of R.C. 2925.51(E)." The state now appeals the trial court's decision granting Napier's motion to dismiss, raising the following single assignment of error for review.

{¶ 17} THE BUTLER COUNTY COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR WHEN IT GRANTED APPELLEE'S MOTION TO DISMISS.

{¶ 18} The state argues the trial court erred by granting Napier's motion to dismiss upon finding the state could not adhere to the requirements set forth by R.C. 2925.51(E). We agree.

{¶ 19} "The Ohio Revised Code provides a mechanism whereby the accused in a drug case may request in writing that a sample of the chemical be preserved for testing." *State v. Hendricks*, 9th Dist. Summit No. CA25133, 2011-Ohio-3796, ¶ 7. This mechanism is found in R.C. 2925.51. That statute is designed to ensure that a defendant accused of violating R.C. Chapter 2925, like Napier, has the opportunity to prepare a valid defense

- 8 -

where there is a question as to the makeup of the drug involved in the charged offense. *Godby*, 1984 Ohio App. LEXIS 8796 at *6. Specifically, "R.C. 2925.51(E) provides that any individual accused of a violation of R.C. Chapter 2925 is entitled, upon proper written request, to have a portion of the substance forming the basis of the alleged violation preserved for the benefit of independent analysis performed by a laboratory analyst employed [by] the accused." *Bross*, 1990 Ohio App. LEXIS 4716 at *2.

{¶ 20} Although "[t]he right to have an independent analysis is derived exclusively from statute, rather than from the constitution," *State v. Dorton*, 5th Dist. Licking No. CA 2651, 1980 Ohio App. LEXIS 12005, *9 (Feb. 20, 1980), this court has previously determined that the dismissal of the indictment is a proper remedy for when the state violated the requirements set forth by R.C. 2925.51(E). *Smallwood*, 1988 Ohio App. LEXIS 191 at *8, citing *Godby*; *see, e.g., Riley*, 69 Ohio App.3d at 511 ("[o]ur prior decisions in *Godby* and *Smallwood* are dispositive of the case at bar and we find that the trial court did not err in dismissing the indictment against appellee" where the state violated the requirements set forth in R.C. 2925.51[E]); *see also Bross* at *3 ("[t]he *Smallwood* decision * * * affirmed the dismissal of the indictment as a proper remedy for a violation of R.C. 2925.51[E]").

{¶ 21} However, in so far as this court's decisions in *Godby*, *Smallwood*, *Riley*, and *Bross* hold that a trial court *must* dismiss the indictment in a case where the state cannot adhere to the requirements set forth in R.C. 2925.51(E), this court's decisions in those cases are no longer good law and are hereby overruled. Contrary to what this court held in those four cases now approaching over 30 years ago, R.C. 2925.51(E) "is not designed to automatically prevent the conviction of a defendant or suppression of a laboratory report regarding drugs that have been destroyed prior to trial." *State v. Calhoun*, 9th Dist. Lorain No. 94CA005907, 1995 Ohio App. LEXIS 3336, *3-4 (Aug. 9, 1995). Rather, it is now

- 9 -

generally well established that "a violation of a defendant's statutory rights under R.C. 2925.51(E) 'provides an insufficient basis, standing alone, to suppress the [s]tate's evidence.'" *State v. Barron*, 2d Dist., 2011-Ohio-2425, ¶ 14, quoting *State v. Christian*, 2d Dist. Montgomery No. 17824, 1999 Ohio App. LEXIS 6035, *18 (Dec. 17, 1999). This is because, absent a legislative mandate requiring its application, "a purely statutory violation does not trigger application of the exclusionary rule." *State v. Dallman*, 12th Dist. Clermont Nos. CA2017-11-056 and CA2017-11-057, 2018-Ohio-2670, ¶ 26, citing *State v. Jones*, 88 Ohio St.3d 430, 435-436 (2000); *see also State v. Morse*, 12th Dist. Warren Nos. CA2001-11-099 and CA2001-11-100, 2002-Ohio-3873, ¶ 20 ("the exclusionary rule will not ordinarily be applied to evidence that is the product of police conduct violative of state law, but not violative of constitutional rights, absent a legislative mandate requiring application of the exclusionary rule").

{¶ 22} Because a violation of a defendant's statutory rights under R.C. 2925.51(E) is insufficient to automatically trigger the *suppression* of the state's evidence, we hold that such a violation, standing alone, would also be insufficient to automatically trigger the *dismissal* of the indictment. A defendant alleging a violation of R.C. 2925.51(E) must instead "establish a violation of his [or her] constitutional rights to obtain a remedy." *State v. Jarvis*, 2d Dist. Montgomery No. 16388, 1998 Ohio App. LEXIS 453, *15 (Feb. 13, 1998). This is done by applying the standard for evaluating due process violations set forth by the United States Supreme Court in *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333 (1988). *See, e.g., State v. Johnson*, 8th Dist. Cuyahoga No. 82527, 2003-Ohio-4569, ¶ 12 ("[v]iolations of R.C. 2925.51 are evaluated under the *Arizona v. Youngblood, supra*, standard for due process violations"), citing *State v. Smith*, 9th Dist. Lorain No. 93CA005585, 1994 Ohio App. LEXIS 1089, *9 (Mar. 16, 1994). Therefore, for the defendant to prevail, the defendant must show that the state either "(1) failed to preserve materially

- 10 -

exculpatory evidence or (2) in bad faith, destroyed potentially useful evidence." *Barron*, 2011-Ohio-2425 at ¶ 15, citing *State v. Franklin*, 2d Dist. Montgomery No. 19041, 2002-Ohio-2370, ¶ 44 thru 46, citing *Youngblood* at 57-58; *State v. Brown*, 170 Ohio App.3d 235, 2007-Ohio-179, ¶ 12 (2d Dist.) ("[w]hen evidence is only potentially exculpatory, the destruction of such evidence does not deprive an accused of due process unless the police acted in bad faith when destroying the evidence").

{¶ 23} The evidence at issue in this case – a substance that tests conducted by the Hamilton County Crime Lab determined was 4.96 grams of methamphetamine – did not have any exculpatory value to Napier that was apparent prior to its destruction. *See, e.g. Barron*, 2011-Ohio-2425 at ¶ 16 (appellant's urine sample "had no exculpatory value that was apparent before its destruction because it already had tested positive for cocaine"). This is because, by moving the trial court for an order requiring the state to supply his expert with a representative sample of that substance, Napier was merely planning to subject the substance to additional testing. This does not, in and of itself, make the substance materially exculpatory. "'[E]videntiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant,' is not materially exculpatory." *Id.*, quoting *Christian*, 1999 Ohio App. LEXIS 6035 at *20. This makes sense when considering there was no basis to conclude the substance was something other than methamphetamine prior to its destruction. *See, e.g., Brown*, 2007-Ohio-179 at ¶ 13 (there was no basis to conclude that the substance was not crack cocaine where the state "obtained a laboratory report showing that the substance seized from the pocket of [d]efendant's shirt was cocaine" prior to its destruction). Therefore, rather than materially exculpatory evidence, the substance was only potentially useful evidence. Accordingly, because the substance was, at best, merely potentially useful evidence, its destruction did not constitute a due process violation that would entitle Napier

to a remedy absent a finding of bad faith.

{¶ 24} The record indicates that the substance was destroyed pursuant to the standard procedure employed by the Butler County Sheriff's Office when deciding whether to retain certain evidence for still open, albeit older cases. "The fact that the substance was destroyed pursuant to 'standard procedure' does not alter the fact that appellee violated its statutory duty to preserve the sample portion until it was no longer needed for compliance with R.C. 2925.51." *State v. Hutcherson*, 10th Dist. Franklin No. 89AP-577, 1989 Ohio App. Lexis 4484, *4 (Nov. 28, 1989). However, although it "cannot use its own 'standard procedure' as a shield to providing discovery that has been legislatively mandated," there is nothing in the record to indicate the Butler County Sheriff's Office, or the state in general, acted in bad faith by destroying the evidence approximately eight years after Napier absconded on the eve of trial.

{¶ 25} "'The term 'bad faith' generally implies something more than bad judgment or negligence.'" *Barron*, 2011-Ohio-2425 at ¶ 17, quoting *State v. Buhrman*, 2d Dist. Greene No. 96 CA 145, 1997 Ohio App. LEXIS 4093, *35 (Sept. 12, 1997). The term also "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or will partaking of the nature of fraud" that "embraces the actual intent to mislead or deceive another." *Barron*. None of that occurred here. Therefore, because there is no indication that the substance was destroyed in bad faith, the destruction of the evidence did not constitute a violation of Napier's due process rights that would entitle him to a remedy. *See, e.g., Barron* at ¶ 17, 21 (appellate court "unpersuaded that the trial court abused its discretion in declining to suppress the lab test results" where the defendant was unable to establish "the actions of the prosecution, or of the crime lab, amounted to bad faith"). Accordingly, for the reasons outlined above, we find the trial court's decision to grant Napier's motion to dismiss was error.

{¶ 26} In so holding, we note that this court offers no opinion as to what remedy a trial court should award to a defendant who, unlike Napier in this case, prevails on a due process claim based on the destruction of evidence in violation of R.C. 2925.51(E). We believe that is a question better suited for the trial court to decide based on the facts and circumstances of that particular case. This allows the trial court to exercise its discretion in fashioning the remedy that it believes should be awarded to an aggrieved defendant. Such a remedy may include, but is not limited to, suppressing the evidence or, in more egregious cases, dismissing the indictment outright. Given the trial court's discretion in this matter, a trial court's decision as to what remedy to award to the defendant would be reviewed by this court for an abuse of that discretion. "Such a standard requires extraordinary deference to the trial court" that allows this court to reverse the trial court's decision only if we were to find the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Davis*, 12th Dist. Butler No. CA97-12-240, 1998 Ohio App. LEXIS 4550, *4 (Sept. 28, 1998).

{¶ 27} Judgment reversed and remanded.

HENDRICKSON, P.J., and RINGLAND, J., concur.