[Cite as *State v. Anderson*, 2023-Ohio-4463.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     23CA0007-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RAYSHON M. ANDERSON | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.     20CR0868 |

DECISION AND JOURNAL ENTRY

Dated: December 11, 2023

---

HENSAL, Presiding Judge.

{¶1} Rayshon Anderson appeals his convictions by the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} On August 24, 2020, an Ohio State Patrol Trooper initiated a traffic stop after observing a vehicle traveling southbound on Interstate 71 at 94 miles per hour. The trooper learned that the driver, Mr. Anderson, had a suspended license and warrants for his arrest from another jurisdiction. While conducting an inventory search so that the vehicle could be towed, another trooper noticed a baggie containing a white, powdery substance in the driver's door compartment. Upon further search of the vehicle, a scale was also identified. The contents of the baggie were later determined to contain heroin. Mr. Anderson was charged with possession of heroin and, in a supplemental indictment, assault against a police officer.

**{¶3}** A jury found Mr. Anderson guilty of the drug charge and found that the amount of heroin involved was more than one hundred grams. Mr. Anderson then pleaded guilty to assault. The trial court found that Mr. Anderson was a major drug offender and sentenced him to a mandatory eleven-year prison term for possession of heroin. The trial court also sentenced him to a concurrent nine-month prison term for assault. Mr. Anderson appealed, assigning five errors for this Court's review. This Court has rearranged his assignments of error for purposes of disposition.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED WHEN IT DENIED MR. ANDERSON['S] [MOTION TO] CONTINUE THE TRIAL FOR MR. ANDERSON TO CONDUCT INDEPENDENT ANALYSIS OF THE SUBSTANCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION.

**{¶4}** Mr. Anderson's first assignment of error argues that the trial court erred by denying his request for a continuance so that additional testing of the substance at issue could be conducted. This Court does not agree.

**{¶5}** According to Revised Code Section 2925.51(E), any defendant accused of a drug offense "is entitled, upon written request made to the prosecuting attorney, to have a portion of the substance that is * * * the basis of the alleged violation preserved for the benefit of independent analysis performed by a laboratory analyst employed by the accused person, or, if the accused is indigent, by a qualified laboratory analyst appointed by the court." The prosecuting attorney must provide the sample to the defendant's analyst at least fourteen days before trial. *Id.* The purpose of Section 2925.21(E) is to guarantee that individuals accused of committing drug offenses can prepare a defense when the composition of the drugs at issue is in question. *State v. Napier*, 12th Dist. Butler No. CA2020-03-038, 2020-Ohio-5457, ¶ 19. Section 2925.21(E) therefore guarantees that, upon request, a sample of the drugs at issue will be preserved and provided to the defendant's

analyst—but Section 2925.21(E) does not create a right to testing itself. *See State v. Ojezua*, 2d Dist. Montgomery No. 27768, 2018-Ohio-3812, ¶ 27-28.

{¶6} Although Mr. Anderson frames his assignment of error in terms of the requirements of Section 2925.21(E), the record demonstrates that those requirements are not at issue. There is no dispute that the drug evidence in this case has been preserved—rather, Mr. Anderson's assignment of error challenges the trial court's denial of a continuance that he requested on the eve of trial to compel independent drug testing to be conducted *in a specific manner*.

{¶7} On October 13, 2022, Mr. Anderson, who was represented by a retained attorney providing services pro bono, moved the trial court to grant independent testing of the drugs at the State's expense. The trial court awarded Mr. Anderson $2,000 for that purpose on October 18, 2022, and set the case for a jury trial commencing on December 12, 2022. Nothing further related to the testing appears on the record until four days before trial, when Mr. Anderson moved the trial court to compel the Medina County Drug Task Force to release a sample of the drugs to his expert for testing. In that motion, Mr. Anderson represented that his expert's initial position was that he wanted the entire remaining sample released, but that he had modified his request to include a representative sample of one gram. Mr. Anderson also explained that his request of the State had been to send the sample from their custody to his expert but that the State had refused to do so absent a court order to that effect. Mr. Anderson represented that the cost of compensating his expert for his travel to Ohio to conduct the independent analysis would consume most of the $2,000 that the trial court had previously awarded and, consequently, he asked the trial court to compel the State to send the sample to his expert by hand delivery or common carrier.

{¶8} On the date that the trial began, Mr. Anderson requested a continuance for the first time, reiterating the request that the trial court compel the State to send a sample to his expert. The

State indicated that it would not consent to a sample being transported out of its custody to a third party for testing. The State explained:

> So we're not going to give up a gram of the drug evidence in a major drug offender case to send it out somewhere that we don't know. We don't even know this person. You know, that's just not the way it's done. It's always done in the custody and control of the State of Ohio, as this Court is well aware, and throughout the years, it's never been made to do otherwise.

The trial court also noted the unusual nature of Mr. Anderson's request:

> I have * * * had independent analysis and testing for cases on my docket for twenty-three years, and I don't remember a single instance where the drug wasn't tested at the agency by the independent analyst, and the - - I don't know that there's a way to do it otherwise. I've never ordered drugs released from BCI for analysis.
>
> * * *
>
> * * * [W]e've had other analysts * * * drive to BCI. The evidence doesn't leave BCI. They do whatever testing is necessary and they prepare a report. That's what I've seen, and I'm trying to figure out why that couldn't be done in this case.

In that respect, the trial court noted that the motion for independent testing at the State's expense had been granted almost two months before trial was scheduled to begin. The trial court observed that the appropriate motion would have been for Mr. Anderson to request any additional funds that were necessary for his expert to travel to BCI but noted that no such motion had been filed and that Mr. Anderson had not brought the matter to the trial court's attention until the eve of trial.

{¶9} The decision to grant or deny a continuance is committed to the discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus. In this case, the trial court observed that the motion for independent testing had been granted almost two months earlier but noted that the motion to compel was not filed before the Court until the eve of trial. In addition, it appears from the record of that hearing that on the day of trial, Mr. Anderson maintained his position that the trial court should grant a continuance *and* compel the State to release the sample to his expert by common carrier. Given these circumstances, we cannot conclude that the trial court abused its

discretion by denying that continuance.  In doing so, we also note that Mr. Anderson had the opportunity to thoroughly cross-examine the analyst during trial.  *Compare State v. Buis*, 2d Dist. Montgomery No. 27778, 2018-Ohio-1727, ¶ 13-14 (considering an argument under Section 2925.51(E) that the State failed to preserve evidence that was later destroyed).  Mr. Anderson's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

> THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES LEVIED AGAINST MR. ANDERSON.

{¶10}  Mr. Anderson's first assignment of error argues that his conviction and the trial court's determination that he is a major drug offender are not supported by sufficient evidence. This Court does not agree.

{¶11}  "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo."  *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction.  *Thompkins* at 390 (Cook, J., concurring).  For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  We do not evaluate credibility, and we make all reasonable inferences in favor of the State.  *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).  The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proved beyond a reasonable doubt.  *Id.*

{¶12} Mr. Anderson was convicted of possessing heroin in violation of Section 2925.11(A), which prohibits any person from knowingly obtaining, possessing, or using a

controlled substance. Under Section 2955.11(C)(6)(f), possession of heroin is a first-degree felony when the amount involved is equal to or greater than one hundred grams, the offender is classified as a major drug offender, and the maximum penalty for a first-degree felony is mandatory.

{¶13} To "possess" something, for purposes of R.C. 2925.11(A), is to have control over it. R.C. 2925.01(K). Possession cannot be inferred from "mere access * * * through ownership or occupation of the premises upon which the thing or substance is found." *Id*. Nonetheless, possession may be either actual or constructive. *State v. Hilton*, 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 16, citing *State v. McShan*, 77 Ohio App.3d 781, 783 (8th Dist.1991). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 38, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. Presence in the vicinity of an item, standing alone, does not establish constructive possession, but other factors taken together—such as proximity to the item in plain view or knowledge of its presence—may be circumstantial evidence of possession. *State v. Owens*, 9th Dist. Summit No. 23267, 2007-Ohio-49, ¶ 23.

{¶14} The trooper who undertook an inventory search of Mr. Anderson's vehicle testified that when he opened the driver's door, he noticed a baggie containing a white, powdery substance in the cupholder area of the door compartment. He noted that the baggie was in plain view when he opened the door, and he explained that it was in an area that would have been next to the left leg of the driver. The trooper agreed that the baggie was easily accessible to someone seated in the driver's seat. According to the troopers who testified, Mr. Anderson was the driver of the vehicle, and he was its only occupant. *See State v. Sprouse*, 9th Dist. Summit Nos. 29406, 29407, 2020-Ohio-91, ¶ 9-10.

{¶15} Considering the troopers' testimony alone and making all inferences in favor of the State, as this Court must do when reviewing the sufficiency of the evidence, a trier of fact could reasonably conclude beyond a reasonable doubt that Mr. Anderson had dominion and control over the baggie and its contents. This Court also notes, however, that Mr. Anderson testified in his own defense and acknowledged that the baggie and its contents belonged to him.

{¶16} Mr. Anderson has also argued that the State did not present sufficient evidence that he possessed an amount of heroin equal to or greater than one hundred grams. In his Criminal Rule 29 motion, Mr. Anderson argued that the State did not produce sufficient evidence that he possessed the drugs at issue. He did not argue that the State failed to prove that the weight of the heroin was greater than or equal to one hundred grams. This Court has consistently held that when an appellant articulates specific arguments in support of a Rule 29 motion, all other arguments are forfeited for purposes of appeal. *State v. Navest*, 9th Dist. Summit No. 28339, 2017-Ohio-5561, ¶ 27. Because Mr. Anderson articulated specific arguments in support of his Rule 29 motion, he has forfeited his argument related to the weight of the heroin for purposes of his first assignment of error.

{¶17} Mr. Anderson's conviction for possession of heroin and his designation as a major drug offender are not supported by insufficient evidence. His first assignment of error is overruled.

### ASSIGNMENT OF ERROR III

MR. ANDERSON'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION.

{¶18} In his third assignment of error, Mr. Anderson has argued that his conviction and his designation as a major drug offender are against the manifest weight of the evidence. This Court does not agree.

**{¶19}** When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶20}** Mr. Anderson has argued that the evidence did not establish that he knowingly possessed one hundred grams or more of heroin because, according to his own testimony, he believed that the substance inside the baggie was fake. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶21}** The Medina County Drug Task Force submitted the substance at issue in this case to BCI for analysis. According to the analyst who tested the substance, a presumptive color test yielded "a very slow faint purple, which is indicative of an opiate substance." Having identified the type of substance, she testified, she then used two separate gas chromatograph/mass spectrometer instruments to test two different samples of the substance. Based on the results of those tests, the analyst determined that the substance contained heroin.

**{¶22}** Mr. Anderson testified that during a period of time in which he was unable to find consistent work and short on funds, an acquaintance gave him a package of drugs to sell. According to Mr. Anderson, he paid the acquaintance an advance in exchange for the package, which the friend told him contained heroin. Mr. Anderson testified that he believed he could sell the contents of the package for $60,000-$70,000 if the quality was high, so he provided samples

to some people who had purchased drugs from him on previous occasions. He recalled that his customers told him that it did not affect them, so they refused to purchase it. Mr. Anderson testified that he suspected they had a high tolerance, so he tested the substance on his tongue. He explained that he would expect heroin to have a strong, medicine-like taste, but that the substance tasted like "just a lot of cut" but with "a slight like medicine taste."

{¶23} Mr. Anderson testified that after he was unsuccessful in finding buyers, he decided to offer the drugs to another acquaintance with less experience for $3,000. According to Mr. Anderson, that person refused but offered to help him with a job opportunity instead. Mr. Anderson explained that he started working with that acquaintance in June 2020, quit the job in August, and spent all his earnings on a trip to Las Vegas. He testified that he was rehired and was speeding on the date of the traffic stop because he had overslept on the day of his orientation. Mr. Anderson remembered putting the baggie in the door compartment because he hoped he could still make a sale, but he testified that he had forgotten it was there on the day of the incident. During cross-examination, Mr. Anderson testified that he thought the heroin was fake, but he also acknowledged that it was also possible that it was a bad batch. He reiterated that there was a slightly medicinal taste to the substance and explained that it tasted like something was wrong with it.

{¶24} The weight of the evidence does not support the conclusion that Mr. Anderson did not knowingly possess heroin because he believed that the substance in the baggie was fake. Even if the baggie contained a significant amount of filler, as Mr. Anderson maintains, the analyst testified that her initial test indicated the presence of opiates and that two subsequent tests identified heroin in two different samples. Possession of heroin in violation of Section 2925.11(C)(6) includes "a compound, mixture, preparation, or substance containing heroin." *Id.*

*Compare State v. Gonzalez*, 150 Ohio St.3d 276, 2017-Ohio-777, ¶ 9-10 (concluding that the amount of cocaine possessed under Section 2925.11(A) includes "the whole compound or preparation of cocaine, including fillers" because "the statutory definition of cocaine plainly encompasses a compound or preparation that includes cocaine."). The jury did not clearly lose its way by concluding that Mr. Anderson knowingly possessed the heroin found in his car.

{¶25} Mr. Anderson also argues that his conviction and his designation as a major drug offender are against the manifest weight of the evidence because the evidence did not establish that he possessed one hundred or more grams of heroin. Mr. Anderson himself, however, testified that he believed the package contained about one hundred grams. The analyst testified that the first step in her testing procedure includes "obtain[ing] a weight *of the substance* prior to any testing * * *." (Emphasis added.) She explained that weight was 102.26 grams, and there was no testimony that implied otherwise. This argument is also not well taken.

{¶26} This Court cannot conclude that this is the exceptional case in which the evidence weighs heavily against the conviction. *See Otten*, 33 Ohio App.3d at 340. Mr. Anderson's conviction is not against the manifest weight of the evidence, and his third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

MR. ANDERSON WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

{¶27} Mr. Anderson's fourth assignment of error argues that he was denied effective assistance of counsel based on trial counsel's unusual behavior while his case was pending and counsel's failure to obtain independent testing of the substance at issue.

{¶28} In order to demonstrate ineffective assistance of counsel, a defendant most show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id*. at 694.

{¶29} In a direct appeal, ineffective assistance of counsel must be demonstrated by evidence within the record. *See generally State v. Madrigal*, 87 Ohio St.3d 378, 390-391 (2000). "[A] claim of ineffective assistance of counsel on direct appeal cannot be premised on decisions of trial counsel that are not reflected in the record of proceedings * * * [and] [s]peculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." *State v. Zupancic*, 9th Dist. Wayne No. 12CA0065, 2013-Ohio-3072, ¶ 4, quoting *State v. Leyland*, 9th Dist. Summit Nos. 23833, 23900, 2008-Ohio-777, ¶ 7.

{¶30} The record supports Mr. Anderson's representation that trial counsel missed two pretrial appearances and was not aware that a motion had been set for a hearing. When the trial court expressed concern about trial counsel's absences, trial counsel insisted that they reflected a scheduling error on his part. Mr. Anderson's proposed alternative explanation for counsel's actions is based on facts that are not contained within the record on appeal, and they cannot form the basis for a claim of ineffective assistance of counsel. *See Madrigal* at 390-391.

{¶31} Mr. Anderson has also argued that trial counsel was ineffective because he waited until four days before trial to request a continuance or otherwise bring the failure to obtain independent testing of the substance at issue to the trial court's attention. "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *Id*. at 389, citing *Strickland* at 697. Mr. Anderson suggests that independent testing would have established

that the substance was not, in fact, heroin. Consequently, he maintains, he would not have been convicted had the testing been conducted. There is no evidence in the record that supports Mr. Anderson's assertion, and prejudice resulting from ineffective assistance of counsel cannot be established through speculation. *Zupancic* at ¶ 4, quoting *Leyland* at ¶ 7.

**{¶32}** Mr. Anderson has not demonstrated that he received ineffective assistance of trial counsel. His fourth assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED WHEN IT DENIED INTRODUCTION OF RELEVANT EVIDENCE.

**{¶33}** In his fifth assignment of error, Mr. Anderson argues that the trial court erred by prohibiting him from questioning the analyst about the purity of the drugs at issue. This Court does not agree.

**{¶34}** Under Evidence Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Relevant evidence is generally admissible. Evid.R. 402. "The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). *See also* Evid.R. 103(A) ("Error may not be predicated upon a ruling which * * * excludes evidence unless a substantial right of the party is affected * * *.").

**{¶35}** The trial court did not prohibit Mr. Anderson from questioning the analyst about the purity of the substance. Instead, Mr. Anderson asked the analyst to clarify that her duties were confined to the presence or absence of a controlled substance. Over the *State's* objection, the trial court permitted the analyst to clarify that "BCI does not test for the purity of a substance. It is only

a qualitative analysis, whether a substance is present [or] not." Without excluding any testimony, the trial court instructed the jury as follows:

> The unambiguous law in the State of Ohio is that the weight of the substance – the weight of the substance for the purposes of this case – includes the entire compound, mixture, preparation, or substance including any fillers that are part of the usable drug. Okay? So we don't have a purity test in the State of Ohio with regard to this matter.

The trial court did not limit Mr. Anderson's own testimony about his belief that the purity of the substance was compromised. Consequently, the record does not demonstrate that the trial court excluded any testimony on this point, whether it was relevant or not. Mr. Anderson's fifth assignment of error is overruled.

### III.

**{¶36}** Mr. Anderson's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

STEVENSON, J.
CONCURS.

FLAGG LANZINGER, J.
DISSENTS.

APPEARANCES:

YU MI KIM-REYNOLDS, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.