[Cite as *State v. Hartwell*, 2025-Ohio-2278.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.   31219 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO CASE No.    CR-2023-13-3974 |
| VIVIAN K. HARTWELL | |
| Appellant | |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2025

SUTTON, Judge.

{¶1}   Defendant-Appellant Vivian Hartwell appeals the judgment of the Summit County Court of Common Pleas.  For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2}   This appeal arises from an incident on Graham Road in Stow, Ohio, involving Ms. Hartwell, who was driving a gold Cadillac, and S.W., who was driving a white Chevy Tahoe. After Ms. Hartwell cut into S.W.'s lane of traffic, S.W. honked his car horn to alert Ms. Hartwell of his presence in the lane.  Ms. Hartwell "brake-check[ed]" S.W., forcing him to slam on his brakes to avoid running into the curb.  S.W. then passed Ms. Hartwell's vehicle.  Ms. Hartwell again got in front of S.W.'s vehicle, brake-checking him a second time.  S.W. then went into the far left lane and Ms. Hartwell threw an uncapped bottle of a sports drink into his vehicle through an open window.  At the red light, S.W. exited his vehicle to get Ms. Hartwell's license plate

information for the police. Ms. Hartwell then put her vehicle in reverse and hit the Chevy Malibu behind her, which caused damage to the Chevy Malibu and injury to its driver. Ms. Hartwell cut her wheel and drove into S.W.'s lane of traffic where she struck S.W. with her vehicle and he went up over the hood of Ms. Hartwell's vehicle. Ms. Hartwell drove through the red light and left the scene of the accident. S.W. and D.W., the driver of the Chevy Malibu, were transported to the hospital. S.W. suffered a torn rotator cuff in his shoulder which required surgery at a later date.

{¶3} Ms. Hartwell was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(2)/(D)(1)(a), a felony of the second degree, one count of vehicular assault, in violation of R.C. 2903.08(A)(2)(b)/(C)(2), a felony of the third degree, and one count of failure to stop after an accident, in violation of R.C. 4549.02(A)(1)(a)/(B)(2)(a), a felony of the fifth degree. Ms. Hartwell pleaded not guilty and the matter proceeded to jury trial. The jury found Ms. Hartwell not guilty of felonious assault. However, the jury found Ms. Hartwell guilty of assault, the lesser included offense, vehicular assault, and failure to stop after an accident. The trial court sentenced Ms. Hartwell to an aggregate term of 18 months of imprisonment.

{¶4} Ms. Hartwell appeals raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**[MS. HARTWELL'S] CONVICTIONS FOR ASSAULT, VEHICULAR ASSAULT, AND FAILURE TO STOP AFTER AN ACCIDENT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶5} In her first assignment of error, Ms. Hartwell argues her convictions for assault, vehicular assault, and failure to stop after an accident are against the manifest weight of the evidence. Specifically, Ms. Hartwell argues the State's evidence does not prove Ms. Hartwell acted recklessly in running S.W. over with her vehicle, or that Ms. Hartwell knowingly caused

S.W. serious physical harm. We note that, although portions of Ms. Hartwell's arguments sound in sufficiency of the evidence, Ms. Hartwell has failed to raise sufficiency of the evidence as an assignment of error. As such, this Court will proceed with a manifest weight of the evidence analysis.

{¶6} This Court has previously stated:

[i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶7} An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id*. Although this Court must consider the credibility of witnesses as part of our manifest weight review, we are mindful of the well-established principle that a trier of fact enjoys the best position to assess the credibility of witnesses. *See State v. Rivera*, 2019-Ohio-62, ¶ 39 (9th Dist.).

{¶8}     Here, the jury heard S.W.'s testimony about the incident at hand wherein S.W. explained the details leading to him being struck by Ms. Hartwell's vehicle.  S.W. testified, at the time of the incident, Ms. Hartwell  "was very angry, very hostile, very angry."  S.W. further testified:

> Yes, so she throws the bottle into my car, contaminating the inside of my car, so now I'm immediately believing I was assaulted, and now the police need to get involved.  I couldn't even get my car in park before she put her car in reverse and accelerated full throttle backwards.
>
> So I get my car to park.  I get out of my car, and as I walk around behind my car, [] she was backing up in this lane [], and apparently there was a car coming up behind her, and she smashed into the front of that car and totaled that car and possibly injured those people in that car.
>
> I'm standing behind my car at this point in the left-turn lane, and I'm, like, "What are you doing?" The driver of the gold Cadillac looked at me, put it in drive, cut the wheel, and cut into my lane behind my car, came at me aggressively with the car.
>
> I was able to put my hands out as she briefly slowed down.  As soon as my hands hit the front of the car, she accelerated hard and threw me up over the hood of the car.

Further, S.W. testified he was "in fear [for] his life[,]" and he saw the hood pass under him, the edge of the hood and the wipers, and he reached "for everything on the car trying to grab something to hold on to."  S.W. explained that he started to fall off the side of the car, and saw the driver's mirror and top of the door, and he was still trying to hold on when he fell and hit the ground on his left side.  S.W. testified Ms. Hartwell did not stop and left the scene.

{¶9}     With regard to his injuries, S.W. testified, while at the scene, his left arm began to hurt and he "was having pain and numbness in [his] hand."  Additionally, S.W. stated:

> The longer I sat there in the car, the more severe the pain became in my left arm and shoulder and down into my hand[], and the longer I sat there, the more severe the pain became, and it got to the point as to when the paramedic got there that I could not move my left arm or left hand.

S.W. indicated he was transported to the emergency room at Akron City Hospital where he was examined and released that same day with pain medication and a referral to an orthopedic specialist. S.W. had surgery on his left shoulder at a later date and wore a sling 24-hours a day for 3 months, causing him to require assistance with daily tasks. S.W. was off work for 3 months and was then placed on light duty for a period of time. Although the pain lessened in severity, S.W. explained the pain "never stopped[,]" and he was still in pain. S.W. also indicated his arm "still does not function correctly."

{¶10} S.W.'s orthopedic surgeon, Joseph Rabe, M.D., testified he reviewed S.W.'s medical records that indicated S.W. was a pedestrian who was struck by a vehicle and had torn his rotator cuff. Further, Dr. Rabe testified S.W. had pain and lacked a range of motion in his left arm. Dr. Rabe explained S.W. had a "massive tear" in his rotator cuff and S.W.'s left arm was pseudoparalytic. Dr. Rabe indicated without surgery, it was unlikely S.W.'s rotator cuff would have repaired itself. Dr. Rabe also testified S.W., at 6 months post-surgery, "still has limitations in his active range of motion" and "some weakness there still."

{¶11} M.B., an eyewitness to the incident, testified that an:

[o]lder gentleman stepped out of his vehicle and looked at the car behind him and kind of put his hands up in a "what-are-you-doing" fashion. The car behind him put it in reverse, hit the car behind, and then put it into drive and then ran through the gentleman, through the red light, and then kept going up the road.

M.B. explained when he saw S.W. get hit, he ran over to help and called 911. M.B. further stated as to S.W.'s condition: "I mean, he was pretty banged up. You know, you get plowed through by a car, over the hood, over the top, yeah, I'd probably be pretty grouchy too."

{¶12} M.S. and T.S., eyewitnesses to the incident, testified regarding what they witnessed on the date in question. M.S. stated she saw a vehicle "pitch something from a cup from the driver's window onto this white Tahoe[.]" M.S. further explained the gentleman from the white

Tahoe got out of his car and walked to the back of his vehicle and the other vehicle backed up into a white car behind it. M.S. then stated:

> So he had stood there, and all of a sudden, [Ms. Hartwell's vehicle] made a sharp turn, and I saw the vehicle hit [S.W.] and knock him up over the hood, and I'm , like, "Oh my God, is he okay?" Because I saw him roll off the car and hit the concrete, and that's when I dialed 911 because it looked like he was hit pretty good.

T.S. testified he saw S.W. get out of a white SUV and walk to the back end of the SUV. T.S. further explained:

> And then when [S.W.] got over towards the passenger side of the backside of his vehicle, this car [] backed up real fast, and [S.W.] stepped away, and then [Ms. Hartwell's vehicle] turned, came right at him, hit him. He went up on the hood, rolled off the side.

> That car never slowed down and kept continuing around the vehicle and took off[.]

T.S. indicated he looked for a license plate but he could not make out anything other than a Cadillac medallion.

{¶13} R.O. and his son, D.O., were also eyewitnesses to the incident. R.O. testified:

> I just saw a commotion to the left of me, and I looked over, and there was a guy getting out of a white SUV. He was walking back and looking at the back of it- -[] like he was puzzled, trying to figure out what was going on.

> And then the car behind him slammed into reverse, hit the car behind it, and then the gentleman was trying to get out of her way, kept moving to try to avoid the car, and she swung over and rolled him off the top of [her] car, slammed him on the pavement, and it was like one of those weird things out of a movie.

> It just happened all so fast, and I saw her taking off up the road, and I half thought about going after her because she's running from a serious accident[.]

D.O. testified that he heard yelling from the vehicle that had just reversed into the vehicle behind it, and the person said, "Die, cracker." D.O. further stated:

> From that point, about a second, second and a half later, the vehicle starts juttering like it's squaring up on the person, on the gentleman that's standing outside of his vehicle, and then it took off at a high rate of speed. I didn't see any brake lights coming from it when it struck the gentleman.

He ended up going up and over and rolling over the hood and part of the windshield.

{¶14} The jury also heard testimony from police officers and detectives who investigated this incident and located the sports drink bottle in S.W.'s vehicle, and the matching lid in Ms. Hartwell's vehicle, watched a video of the incident taken by a witness on scene, heard testimony from Ms. Hartwell's expert witness, Vincent Cronin, on his theory of the incident and proximate causation of S.W.'s injuries, heard Ms. Hartwell's counsel's cross-examination of each witness regarding this incident, and saw photographs and diagrams illustrating this incident.

{¶15} As indicated above, the jury was free to believe all, part, or none of the testimony of each witness. "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Gannon*, 2020-Ohio-3075, at ¶ 20. Upon review of this record, we cannot say the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶16} Accordingly, Ms. Hartwell's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT ABUSED ITS DISCRETION IN ISSUING A LIMITING INSTRUCTION AS TO [MS. HARTWELL'S] EXPERT WITNESS, VINCENT CRONIN, WITH RESPECT TO OPINIONS RELATING TO THE CAUSE OF THE COLLISION AND THE ALLEGED VICTIM'S INJURIES, IN VIOLATION OF [MS. HARTWELL'S] RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.**

{¶17} In her second assignment of error, Ms. Hartwell argues the trial court erred in limiting Mr. Cronin's testimony regarding the parties' perception of events, or what was in the mind of Ms. Hartwell at the time of the incident. Further, the trial court did not allow Mr. Cronin

to shift blame on S.W., the victim, in his report or testimony regarding reconstruction of the incident.

**{¶18}** This Court generally reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *See State v. Campbell*, 2021-Ohio-2050, ¶ 16 (9th Dist.); *see also State v. Anderson*, 2023-Ohio-4463, ¶ 34 (9th Dist.). "The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *Anderson* at ¶ 34, quoting *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). Under this standard of review, we must determine whether the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶19}** Here, the trial court held a *Daubert* hearing wherein Mr. Cronin was qualified as Ms. Hartwell's expert witness on accident reconstruction. However, the trial court also issued a limiting instruction to Mr. Cronin that he could not testify as to road rage or the mental or emotional states of Ms. Hartwell or S.W. In so doing, the trial court explained:

> He can't really speak to the emotions of the people at the time that the accident occurred. It would be impossible for any expert to do that, but the way that he just testified about the injury that was sustained by the prosecuting witness, where it was sustained, does not fit the description of what the State said happened, and he can testify to that.
>
> . . .
>
> I think that what you can mention, sir, in your testimony in front of the jury is that you don't believe that the accident would have occurred had [S.W.] not exited his vehicle.
>
> I don't think that you can go into [Ms. Hartwell] fearing for her safety, that [S.W.] was a large man approaching her vehicle.
>
> . . .

And then on the primary cause of crash, I think that instead of indicating that it's an improper and imprudent decision to exit his vehicle, I think the only thing you're going to be able to testify to is that in your opinion, the crash would not have occurred if he had not exited his vehicle and leave it at that. You can't really go into any sort of testimony as to what was in the emotions or the mind of [Ms. Hartwell] at the time.

Indeed, in spite of this limiting instruction, the trial court allowed Mr. Cronin to testify regarding Ms. Hartwell's theory of the incident to the jury. Mr. Cronin testified regarding the inconsistencies he observed with S.W.'s injuries and the damage to Ms. Hartwell's vehicle and the State's theory of the incident. Mr. Cronin also testified that if S.W. had remained in his vehicle, S.W. would not have been injured.

{¶20} Based upon this record, we cannot say the trial court abused its discretion or that Ms. Hartwell was materially prejudiced by the trial court's limiting instruction to Mr. Cronin.

{¶21} Accordingly, Ms. Hartwell's second assignment of error is overruled.

III.

{¶22} For the foregoing reasons, Ms. Hartwell's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CARR, J.
CONCUR.


APPEARANCES:

BRIAN A. SMITH, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.