**[Cite as *State v. Jones*, 2025-Ohio-3259.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 31130 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CAMERON JONES | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2023-03-0831-D |

DECISION AND JOURNAL ENTRY

Dated: September 10, 2025

FLAGG LANZINGER, Judge.

{¶1} Cameron Jones appeals his convictions from the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} A grand jury indicted Jones on one count of aggravated murder, one count of purposeful murder, one count of felony murder with the predicate offense of aggravated robbery, one count of aggravated robbery, two counts of robbery, and one count of felonious assault. All of the counts contained firearm specifications. Jones pleaded not guilty. Prior to trial, the State dismissed one of the robbery counts. The matter proceeded to a jury trial wherein the following evidence was adduced.

{¶3} According to the evidence the State presented at trial, Jones attended a New Year's Eve party at D.H.'s house on December 31, 2022. Jones attended the party with his three friends: Layveire ("Lay"), Makhi, and Nino (collectively, the "Co-Defendants"), all of whom were also

charged in relation to D.H.'s death. After reaching plea agreements with the State, the Co-Defendants testified on behalf of the State at Jones's trial.

{¶4} The State presented testimony at trial from the Co-Defendants, D.H.'s neighbor (who called 911), D.H.'s neighbor's daughter (who was at D.H.'s house at the time he was shot), law enforcement who responded to the scene and/or investigated the shooting, and the Summit County Medical Examiner. Testimony from the foregoing witnesses supported the following version of the events.

{¶5} D.H. was a drug dealer who kept money and drugs in his fanny pack. D.H. also carried a gun on his person. Jones and the Co-Defendants knew D.H., and would often hang out at his house. Relevantly, Jones lived in a two-story duplex with two bedrooms and one bathroom upstairs.

{¶6} Prior to attending D.H.'s New Year's Eve party, Jones and the Co-Defendants devised a plan to rob D.H. Lay and Nino testified that everybody agreed to the plan, but Makhi testified that he was never involved in the plan. Text messages exchanged between Lay and Nino, which the State used as an exhibit at trial, confirmed the plan to rob D.H. on New Year's Eve. Lay and Nino's testimonies differed as to whether they planned to steal D.H.'s fanny pack or his gun. Regardless, their testimonies were clear that they—along with Jones—agreed to surreptitiously rob D.H. on New Year's Eve.

{¶7} According to Lay, D.H. was in his bedroom when he, Jones, Nino, and Makhi went upstairs to smoke marijuana in D.H.'s bedroom. Lay testified that he, Jones, and Nino had guns on them, but he could not recall if Makhi was armed.

{¶8} Lay testified that he left D.H.'s bedroom at one point and walked into the other upstairs bedroom. While in the other bedroom, Lay heard gunshots and then saw Jones and D.H.

fighting in the hallway. Lay testified that Jones was holding a gun. D.H. then fell down the stairs, and he (Lay) and Jones ran down the stairs, out of the house, and into his car. Nino and Makhi (both of whom testified that they were downstairs when they heard the gunshots) also ran out of the house and into Lay's car. According to Lay, Nino asked Jones why he shot D.H. Jones responded: "You told me to do what I gotta do." Lay testified that Jones left the house with D.H.'s fanny pack, and Nino left the house with D.H.'s gun. On cross-examination, Lay explained that he left D.H.'s bedroom and went into the other upstairs bedroom because Jones "upped his gun" and he "didn't want to see everything that was about to happen."

{¶9} According to Makhi, he was walking up the stairs toward the bathroom when he heard the gunshots. Makhi testified that he "heard scuffling" prior to hearing the gunshots, but he did not see anything. Makhi testified that he ran out of the house after hearing the gunshots.

{¶10} Nino testified that everyone agreed on the plan to rob D.H. Nino testified that he had been upstairs in D.H.'s bedroom prior to the shooting, and that he went downstairs because he saw Jones point a gun at D.H. Nino testified that he did not see the shooting, and that he ran out of the house and into Lay's car after hearing the gunshots. Nino testified that the shooting occurred in D.H.'s bedroom, and that Jones ran out of the house with D.H.'s fanny pack.

{¶11} D.H.'s neighbor, who lived on the other side of the duplex, testified that she did not hear the gunshots, but that she heard what sounded like wrestling and someone falling down the stairs. The neighbor explained that her daughter was at D.H.'s party, and that her daughter ran home and told her D.H. had been shot. The neighbor called 911, and the State played the 911 call for the jury. During the call, the neighbor asked who shot D.H., and someone responded that it was "Cam."

{¶12} The neighbor also testified that she had a camera on her front porch, and that she gave the police the video from that camera. The State played the video for the jury. The video showed Jones and the Co-Defendants running away from the house, and Jones carrying a fanny pack. The video also showed D.H. crawling onto the front porch, screaming in pain and saying "he shot me, bro." The video then showed several other people running away from the house. An unidentified female running away from the house stopped to ask D.H. who shot him. While the audio is not entirely clear, it appears D.H. responded: "Cam." Another female then exited the house and asked D.H. who shot him. D.H. clearly responded: "Cam." A different female asked D.H. if it was "on purpose[,]" and D.H. responded: "Yeah."

{¶13} The neighbor's daughter, S.O., testified that she attended D.H.'s party, and that D.H. was in his bedroom lying down because he did not feel well. S.O. testified that everyone at the party was getting along, and that people were smoking marijuana and drinking alcohol. S.O. testified that she was in the upstairs bathroom when she heard three or four gunshots. S.O. testified that she ran next door and told her mom to call 911, which was reflected in the video the State played for the jury. S.O. identified the people in the video, including D.H. and Jones. S.O. testified that D.H. said Jones shot him, and that Jones had a gun in his hand and was running away from the house with D.H.'s fanny pack.

{¶14} The State also presented testimony from law enforcement who responded to the scene and/or were involved in the investigation. The State further presented testimony from the Summit County Medical Examiner who testified that D.H. died from a gunshot wound to his chest.

{¶15} The defense presented no witnesses. The jury found Jones not guilty of aggravated murder or purposeful murder, but guilty of the remaining counts and specifications. The parties agreed that the counts for aggravated robbery, robbery, and felonious assault merged with the

count for felony murder. The State elected to proceed to sentencing on the count for felony murder. The trial court sentenced Jones to life imprisonment with parole eligibility after 21 years. Jones now appeals, raising two assignments of error for this Court's review.

ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTION FOR MURDER IN VIOLATION OF SECTION 2903.02(A) OF THE OHIO REVISED CODE, AND FELONIOUS ASSAULT IN VIOLATION OF 2903.11(A)(2) OF THE OHIO REVISED CODE, ARE UNCONSTITUTIONAL AS IT IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION.

{¶16} In his first assignment of error, Jones argues that the State failed to present sufficient evidence in support of his convictions for murder under R.C. 2903.02(A) and felonious assault under R.C. 2903.11(A)(2). For the following reasons, this Court overrules Jones's first assignment of error.

{¶17} Initially, this Court notes that the jury found Jones not guilty of purposeful murder under R.C. 2903.02(A). Instead, the jury found Jones guilty of felony murder under R.C. 2903.02(B). Jones's citation to R.C. 2903.02(A) in the caption of his assignment of error appears to be a typographical error.

{¶18} This Court also notes that the caption of Jones's assignment of error challenges the sufficiency of the evidence, not the weight of the evidence. Yet the body of Jones's assignment of error appears to challenge the sufficiency and the manifest weight of the evidence, which are "quantitatively and qualitatively different." *State v. Irvine*, 2019-Ohio-959, ¶ 19 (9th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "The difference, in the simplest sense, is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion." *Irvine* at ¶ 19, quoting *State v. Soucek*, 2018-Ohio-3834, ¶ 4 (9th Dist.). "[I]t is not

appropriate to combine a sufficiency argument and a manifest weight argument within a single assignment of error." *State v. Omenai*, 2024-Ohio-1571, ¶ 13 (9th Dist.), quoting *State v. Seibert*, 2021-Ohio-3069, ¶ 13 (9th Dist.); *see* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to . . . argue the assignment separately in the brief[.]"). Nonetheless, we exercise our discretion to consider the merits of Jones's combined assignment of error.

{¶19} This Court will first address Jones's challenge to the sufficiency of the evidence. "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *Thompkins* at 386. The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the State proved the essential elements of the crime beyond a reasonable doubt. *Id.* The trier of fact is entitled to rely on direct, as well as circumstantial evidence. *See id.*

{¶20} Jones argues that the State failed to present sufficient evidence in support of his convictions for felony murder, aggravated robbery, and felonious assault. This Court will address the elements of each offense in turn.

{¶21} R.C. 2903.02(B) governs felony murder. R.C. 2903.02(B) provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or

attempting to commit an offense of violence that is a felony of the first or second degree . . . ."

This statute "imposes what is in essence strict liability." *State v. Nolan*, 2014-Ohio-4800, ¶ 9.

{¶22} The predicate offense for felony murder in this case was aggravated robbery. R.C. 2911.01(A)(1) provides that:

> No person, in attempting or committing a theft offense, . . . or in fleeing immediately after the attempt or offense, shall . . . [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it . . . .

{¶23} Lastly, R.C. 2903.11(A)(2) governs felonious assault, providing that "[n]o person shall knowingly . . . [c]ause serious physical harm to another . . . ."

{¶24} In his merit brief, Jones concedes that the State presented sufficient evidence to establish that he "was involved in a theft offense that followed the death of [D.H.]." Jones also concedes that the State presented "ample" evidence indicating that he had firearm on him, and that there was a plot to commit robbery. Jones argues, however, that the State failed to prove that he: (1) knowingly (as opposed to recklessly or negligently) shot D.H.; and (2) shot D.H. while committing or attempting to commit a robbery.

{¶25} Jones's arguments lack merit. The State presented testimony and/or video evidence indicating that: (1) Jones and the Co-Defendants devised a plan to steal D.H.'s gun and/or fanny pack; (2) Jones had a gun on him; (3) Jones pointed the gun in D.H.'s face, at which point Nino and Lay left D.H.'s bedroom; (4) Makhi was downstairs when the shots were fired; (5) Jones was the only person with D.H. in D.H.'s bedroom when the shots were fired; (6) Jones ran away from the house moments after the shooting carrying D.H.'s fanny pack; (7) D.H. crawled onto his front porch and told people leaving the house that "Cam" shot him on purpose; (8) Jones responded "You told me to do what I gotta do" when Nino asked him why he shot D.H.; and (9) D.H. died from a gunshot wound to his chest. Viewing this evidence in a light most favorable to the State,

this Court concludes that the State presented sufficient evidence to allow the jury to reasonably conclude that the State proved the essential elements of felony murder with the predicate offense of aggravated robbery, as well as felonious assault, beyond a reasonable doubt. Consequently, Jones's challenge to the sufficiency of the evidence lacks merit.

{¶26} This Court will next address Jones's challenge to the manifest weight of the evidence. When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.). "This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's version of the events." *State v. Harris*, 2024-Ohio-196, ¶ 19 (9th Dist.).

{¶27} In support of his argument that his convictions were against the manifest weight of the evidence, Jones asserts:

> The evidence in the instant case lacks credibility, consistency, and corroboration. The conflicting claims and testimony of events made by the co-defendants in the case should not be enough to convince a reasonable person to rely upon it in the most important of their affairs.

Elsewhere in his assignment of error, Jones points to the fact that some of the State's witnesses had smoked marijuana and/or drank alcohol on the night of the shooting.

{¶28} A review of the trial transcript indicates that there were some inconsistencies among the Co-Defendants' testimonies. For example, Makhi testified that he was not involved in a plan to rob D.H. Yet Lay and Nino testified that everyone (i.e., Jones, Lay, Nino, and Makhi)

was involved in the plan to rob D.H. Additionally, the Co-Defendants admitted to consuming alcohol and/or marijuana on the night of the shooting. The Co-Defendants also admitted that they reached plea agreements with the State in exchange for their testimony at Jones's trial. Some of the Co-Defendants further admitted that their testimony at trial was different from what they originally told the police.

{¶29} The jury was in the best position to evaluate the credibility of the State's witnesses. *State v. Hartwell*, 2025-Ohio-2278, ¶ 7 (9th Dist.). In doing so, the jury was "free to believe all, part, or none" of the witnesses' testimony. *Id.*, quoting *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). The fact that the jury believed the State's version of the events does not render his convictions against the manifest weight of the evidence. *Harris*, 2024-Ohio-196, at ¶ 19 (9th Dist.).

{¶30} Additionally, Jones's argument ignores the fact that the State presented video evidence showing Jones running away from D.H.'s house with D.H.'s fanny pack, and D.H. telling people that "Cam" shot him on purpose. The State also presented text messages between Lay and Nino regarding their plan to rob D.H., both of whom testified that Jones agreed to the plan. Having reviewed the record, this Court cannot say that this is the exceptional case in which the evidence weighs heavily against Jones's convictions. *Croghan*, 2019-Ohio-3970, at ¶ 26 (9th Dist.). Consequently, Jones's challenge to the manifest weight of the evidence lacks merit.

{¶31} In light of the foregoing, Jones's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT DEPRIVED APPELLANT OF [HIS] RIGHT TO A FAIR AND IMPARTIAL JURY AND DUE PROCESS OF LAW WHEN IT ALLOWED THE JURORS TO SUBMIT QUESTIONS TO THE WITNESSES, IN VIOLATION OF APPELLANT'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION

AND ARTICLE ONE, SECTIONS FIVE, TEN, AND SIXTEEN OF THE OHIO CONSTITUTION.

{¶32} In his second assignment of error, Jones argues that the trial court deprived him of his constitutional rights by allowing the jurors to question the witnesses. For the following reasons, this Court overrules Jones's second assignment of error.

{¶33} As the Ohio Supreme Court held in *State v. Fisher*, "the practice of allowing jurors to question witnesses is not a constitutional error," and "is a matter committed to the discretion of the trial court." 2003-Ohio-2761, ¶ 28, 29. To minimize the danger of unfair prejudice, the Ohio Supreme Court has advised that trial courts that permit juror questions should:

> (1) require jurors to submit their questions to the court in writing, (2) ensure that jurors do not display or discuss a question with other jurors until the court reads the question to the witness, (3) provide counsel an opportunity to object to each question at sidebar or outside the presence of the jury, (4) instruct jurors that they should not draw adverse inferences from the court's refusal to allow certain questions, and (5) allow counsel to ask follow[-]up questions of the witnesses.

*Id.*

{¶34} In his merit brief, Jones concedes that Ohio, federal, and other state courts allow jurors to question witnesses. Jones asserts that there is no authority from the United States Supreme Court permitting jurors to ask questions, and that the practice is inherently problematic. Jones argues that, even though the practice is permissible in Ohio, the trial court in this case failed to adhere to the Ohio Supreme Court's guidelines in *Fisher*. Specifically, Jones asserts that the trial court allowed the jurors to ask questions directly to the witnesses instead of submitting questions to the trial court. Jones also asserts that, at the time the trial court decided to not ask certain questions from the jurors, it failed to contemporaneously instruct the jury to not draw any inferences from its refusal to allow the question. Jones further asserts that the trial court failed to

instruct the jurors to not draw any inferences from its decision to ask certain questions during its final instructions to the jury.

{¶35}   Jones's arguments lack merit.  The record reflects that the trial court instructed the jurors as follows prior to the State calling its first witness:

> During this trial, I am going to permit the jurors to ask questions of the witnesses. Here is how it will work.  At the conclusion of every witness's testimony, each of you will be given a note card.  Each of you will write your question or "no question," the words "no question," right?  So that everyone is writing.
>
> And then you will pass them back up, and my bailiff will give them to me, and I will discuss with the lawyers at sidebar which questions will be asked.
>
> So I want to make sure that you understand that not every question is going to get asked.  We will have a discussion about it as lawyers and myself, and then we will put on the record the questions that you want to ask.  Okay?
>
> So if you don't have a question, make sure that you write, "no question."
>
> . . .
>
> You cannot display or discuss your questions with other jurors.  The written questions are delivered to me for consideration.  I decide whether they will be asked.  Don't draw any conclusion if your question is not asked.  Okay?

{¶36}   After defense counsel finished cross-examining each witness, the trial court allowed the jurors to submit written questions, which the trial court then reviewed with counsel at a sidebar.   The trial court provided counsel with an opportunity to object to each question before it decided which questions it would ask the witnesses.  After the trial court asked the witnesses the jurors' questions, the trial court allowed counsel to ask follow-up questions of the witnesses.

{¶37}   The foregoing reflects that the trial court followed the Ohio Supreme Court's guidelines in *Fisher*.  The trial court: (1) required the jurors to submit their questions to the court in writing; (2) instructed the jurors not to display or discuss their questions with other jurors; (3) provided counsel an opportunity to object to the questions at a sidebar; (4) instructed the jurors not

to draw any conclusions from its refusal to ask a question; and (5) allowed counsel to ask follow-up questions of the witnesses. Contrary to Jones's assertion, the trial court did not allow the jurors to ask questions directly to the witnesses. While the trial court did not contemporaneously instruct the jury not to draw any adverse inferences from its refusal to ask a question each time it decided not to ask a question, *Fisher* does not require contemporaneous instructions.

{¶38} Even if the trial court had not followed the Ohio Supreme Court's guidelines in *Fisher*, the *Fisher* decision makes clear that a criminal defendant must still establish prejudice. *Goins v. Oliverio*, 2010-Ohio-3849, ¶ 9 (9th Dist.), citing *Fisher*, 2003-Ohio-2761, at ¶ 7 (acknowledging that the *Fisher* "Court determined in the context of a criminal case that the error must be prejudicial."). An error is prejudicial if it affected the outcome of the trial. *Fisher* at ¶ 7. In his merit brief, Jones has not explained how the trial court's alleged failure to follow the guidelines in *Fisher* affected the outcome of the trial. This Court will not develop a prejudice argument on Jones's behalf. *State v. McKnight*, 2023-Ohio-1933, ¶ 13 (9th Dist.). Jones's second assignment of error is overruled.

III.

{¶39} Jones's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

ADAM M. VANHO, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.